UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 4:17 CR 218 CDP |
| | ) | |
| MICHAEL A. HOLLOMAN, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM AND ORDER

This matter is before the Court on defendant Michael A. Holloman's motion to suppress evidence. Pursuant to 28 U.S.C. § 636(b), the motion was referred to United States Magistrate Judge Shirley P. Mensah, who recommended that the motion be granted. Over the objections of the United States, I will adopt the Report and Recommendation of Judge Mensah and will grant the motion to suppress.

## Background[1]

Defendant Michael A. Holloman was arrested on April 20, 2017 and is charged in this case with being a felon in possession of a firearm. Police had

---

[1] This is a summary of the facts based on the testimony at the suppression hearings; I am not repeating all the factual findings and legal conclusions of the Magistrate Judge, as I conclude that they are all correct.

received a tip that Holloman was a felon known to be in possession of a firearm who lived at a certain address.[2] Police conducted surveillance at the address and saw Holloman walking toward the apartment building. The arresting Detective ran up to Holloman with his gun drawn and ordered him to get on the ground. Holloman complied and the Detective handcuffed and searched him, and seized a wallet and key from his person. He then placed Holloman in a police car and advised him that he was "under arrest and that he had an active warrant for statutory rape second." In fact there was no warrant for Holloman's arrest. After the arresting Detective had received the tip about the firearm, he learned that – six months earlier – a Detective from the sex crimes division had issued a "wanted" for Holloman regarding a statutory rape investigation. The arresting Detective verified that the "wanted" was still "active" but did not learn any details of that investigation.

While Holloman was cuffed and sitting in the police car, the officers provided the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966), told him they were investigating him for a firearms offense, and asked him for consent to search the apartment. He initially refused, but after several requests, he agreed

---

[2] The officers did not know whether this tip was based on personal knowledge of the informant or on rumors he had heard. Before the arrest they had corroborated Holloman's identity and the address provided by the informant, and reviewed his record to see that he had prior arrests.

and they went to the apartment, using the key that had been seized from him to unlock the apartment door. Holloman signed a consent to search form while standing in the kitchen, and then told the officers that there was a firearm on top of the refrigerator. The Detective testified that he then told Holloman that he was under arrest for being a felon in possession of a firearm. After Holloman was transported to the police station, he was again given the *Miranda* warnings, was questioned further, and made an audio recorded statement.

Holloman moved to suppress the evidence of the gun that was seized and the statements that he made to police. Magistrate Judge Mensah held an evidentiary hearing on the motion, and the government presented only the testimony of the arresting Detective. At the conclusion of the hearing Judge Mensah pointed out that the government had presented no evidence regarding the basis for the "wanted," and so it appeared the motion would be granted under *United States v. Hensley*, 469 U.S.221 (1985). She then agreed to hold a second hearing at which the government could present a witness who could testify about the wanted.

At the second hearing, the sex crimes Detective who had issued the "wanted" testified that she had probable cause for an arrest when she issued the "wanted," based on the victim's statement. She said she did not seek a warrant at

that time because the better practice was to interview the defendant before seeking a warrant. Although the Detective testified that safety is always a concern in sex crimes investigations, there is no evidence that she conducted any additional investigation or made other attempts to talk to or arrest Holloman during the six months after the "wanted" was issued and before he was arrested.

After obtaining post-hearing briefs from both sides, Judge Mensah recommended that the motion to suppress be granted. The United States has objected to that recommendation, and both sides have filed additional briefs. I have conducted *de novo* review of the motion, including both reading the transcripts of the hearings and listening to the audio recordings from which the transcripts were made. I have reviewed all the evidence presented, the parties' briefs, and the relevant law. I agree with Judge Mensah that the motion to suppress should be granted.

In *Hensley* the United States Supreme Court held that a wanted flyer issued by another police department could justify an investigatory detention under *Terry v. Ohio*, 392 U.S. 1 (1968), but like any *Terry* stop, the detention cannot exceed the purpose of the investigation. Under all the circumstances of this case, the "wanted" was not sufficient for the arrest that was made. The arresting officers were investigating a gun crime, and they knew only that a "wanted" for a sex

crime was still active. Although a "wanted" can be based on either reasonable suspicion or probable cause, these officers did not know anything about the basis for the "wanted." But they did know that the "wanted" was six months old and that there was no warrant for Holloman's arrest.

The parties' briefs spend some time debating whether the "collective knowledge" doctrine can impute the knowledge of the sex crimes Detective to the Detectives who arrested Holloman on the gun crime, in order to justify the warrantless arrest. In *United States v. Robinson*, 664 F.3d 701, 703-704 (8th Cir. 2011), the Eighth Circuit reiterated its position that for this rule to apply there must be "some degree of communication" between the officers. "This requirement 'serves to distinguish between officers functioning as a "search team" and officers acting as independent actors who merely happen to be investigating the same subject.'" *Id.,* citing *United States v. Gillette*, 245 F.3d 1032, 1034 (8th Cir. 2001). Unlike the officers in the cases the government relies on, in Holloman's case the arresting Detective did not become a "part of [the sex crime investigation] 'team' for purposes of the collective knowledge doctrine." *Robinson,* 664 F.3d at 704. The arresting officers were acting independently based on a firearms tip and lacked their own probable cause. The "wanted" could

only justify their detaining Holloman for the purpose for which it was issued – allowing the sex crimes Detective to interview him.

Moreover, although the sex crimes Detective who issued the wanted testified at the second hearing that she had probable cause to obtain a warrant at the time she issued the wanted, the evidence she actually testified to at the hearing did not support that. The alleged victim did not tell anyone about the incident until ten days afterward, and when questioned she initially denied that there had been any sexual contact, but later said that there had been. She knew Holloman because he was a YMCA employee who taught a class at her school. The Detective corroborated the victim's statement about the name on Holloman's Facebook account and that he had been present at the hotel specified by the victim on the night in question. Although the government argues that this is sufficient probable cause, I conclude that the testimony the Detective gave at the hearing would not be sufficient for the issuance of a warrant. The Detective's failure to seek a warrant, conduct any further investigation, or make any further attempts to interview Holloman for six months shows that she also did not believe she had sufficient evidence to move forward with prosecution at that time.

Judge Mensah correctly determined that Holloman was arrested without probable cause. The government argues that the evidence nevertheless should not

be suppressed because Holloman consented to the search of the apartment. The government makes no attempt to make the showing required under *United States v. Alvarez-Manzo*, 570 F.3d 1070, 1077 (8th Cir. 2009), that the consent was sufficient to purge the taint of the unlawful arrest. To prevent the application of the "fruit of the poisonous tree" doctrine, the government must show that a voluntary consent was an independent, lawful cause of the search. The Court looks to the temporal proximity between the Constitutional violation and the consent, the presence of any intervening circumstances, and the purpose and flagrancy of the Constitutional violation. *Id.*

The testimony here was that the Detective talked to Holloman for five minutes before he consented to the search, and this was after Holloman had been ordered to the ground, handcuffed, placed in the back of a police car surrounded by four officers, told that he was under arrest for a sex crime, and falsely told that there was a warrant for his arrest. He signed the consent form shortly thereafter when taken to the apartment for the search. The time was therefore very short, there was no intervening circumstance, and the officers who made the arrest were investigating a tip of an offense completely different from the wanted that formed the basis of this arrest. They knew nothing of the circumstances of the "wanted." Under *Alvarez-Manzo* this is insufficient to break the causal relationship between

the unlawful arrest and the subsequent search. Because the firearm and Holloman's statements were the result of his unlawful arrest, the evidence must be suppressed.

The government has criticized Judge Mensah's credibility findings, arguing that the arresting Detective's testimony was not contradicted. But a judge is not required to believe any witness simply because no one else testifies differently. The arresting Detective's testimony was quite different on direct and on cross-examination. He repeatedly made inconsistent statements about the time Holloman signed the consent to search form, and continued to give inconsistent statements after the inconsistencies were pointed out to him and even when questioned by Judge Mensah when she sought to clarify what he was saying. His direct testimony implied that Holloman readily agreed to the search, but on cross he indicated that the agreement came only after several requests. He initially testified that the police were "presented with a key" when the truth was they seized it during the search of Holloman's person. He did not know, and did not ask, whether the tip he was investigating about Holloman having a gun was based on the informant's personal knowledge or on rumor, and he gave several non-responsive answers before he finally admitted not knowing that information.

The numerous evasions and inconsistent statements in his testimony certainly raise questions about his credibility.

I will not hold an additional evidentiary hearing. Judge Mensah already allowed a second hearing so the government could present an additional witness after she pointed out the deficiency in the government's evidence. The government has had more than ample opportunity to present whatever evidence it believed was appropriate.

Accordingly,

**IT IS HEREBY ORDERED** that the Report and Recommendation of the United States Magistrate Judge [43] is **SUSTAINED, ADOPTED, and INCORPORATED** herein, and the defendant's Motion to Suppress Evidence and Statements [23] is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is set for trial on the two-week docket beginning **Monday, April 16, 2018 at 8:30 a.m. in Courtroom 14 South.** If either side believes this trial date is not realistic for any reason, counsel are directed to meet and confer and then to seek a telephone conference with the Court as soon as possible.

_____
*CATHERINE D. PERRY*
UNITED STATES DISTRICT JUDGE

Dated this 6th day of March, 2018.